Case 1:22-cv-00047 Document 87 Filed on 05/09/24 in TXSD Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
May 09, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ALYN GUADALUPE MEDINA TREJO, | § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 1:22-CV-047 |
| ANTONY J BLINKEN, | § § § | |
| Defendant. | § | |

## ORDER AND OPINION

Plaintiff Alyn Guadalupe Medina Trejo filed this action under 8 U.S.C. § 1503, seeking a declaratory judgment that she is a United States citizen after she was denied a U.S. passport based on a finding that she did not provide sufficient evidence to establish that she was born in this country. The Court held a two-day bench trial. Based on the record and the applicable law, the Court concludes that Plaintiff has demonstrated by a preponderance of the evidence that she was born in the United States.

**I.     Findings of Fact**

At trial, the Court heard testimony from Maria De Lourdes Trejo Gonzalez (Plaintiff's mother), Alfredo Medina (Plaintiff's paternal grandfather), Zulema Medina (Plaintiff's paternal grandmother), Plaintiff, and Griselda Rosas (Deputy City Secretary for the City of Brownsville). In addition, Mary Saldana, the midwife who Plaintiff alleges attended her birth, testified by

deposition.[1]  Based on the testimony, the admitted exhibits, and the parties' stipulated facts, the Court reaches the following findings of fact regarding Plaintiff's birth.

Maria Trejo was born in Mexico and grew up in Tampico, Tamaulipas, which is about three-hundred miles south of the United States border with Mexico.  At age 17, she moved to the border town of Matamoros, Mexico to live with her maternal aunt.  There, she met Jose Guadalupe Medina Balboa.  Within a year, the couple had their first child (Plaintiff's older brother), although they remained unmarried.

In late 1996 or early 1997, Trejo again became pregnant, leading her to move in with the Medina family.  At the time, she possessed no authorization to enter the United States legally.  Trejo and Jose Medina decided, however, that they would seek to have Trejo give birth in the United States, reasoning that doing so would give their child the best possible future.

In late August 1997, with her due date approaching, Trejo crossed the Rio Grande River with a smuggler's assistance.  Upon entering the United States, she took a taxi to a pre-arranged location, where Jose Medina's brother and wife picked her up and drove her to the home of Mary Saldana, a midwife.

About twenty years earlier, Saldana had worked alongside Jose Medina's mother (Zulema Medina) at a Matamoros business.  Saldana and Zulema Medina did not work together for long, and they appear to have communicated rarely, if ever, during the intervening years.  At some point, Saldana moved to the United States, and by the mid-1980s, Saldana was providing midwife services from her home at 2155 East Taylor Street, Brownsville, Texas.  It appears that in 1997,

---

[1] Saldana passed away on November 25, 2023, rendering her testimony from a deposition taken in this matter admissible under Federal Rule of Evidence 804. (*See* Advisory, Doc. 68)  Each party offered excerpts from that deposition, and Blinken objected to some of Plaintiff's designations. (*See* Objections, Doc. 76)  The Court overrules the objections, with the exception of the relevance objection to designation 15:4-22.  The testimony by Saldana that the Court considers for purposes of this Order and Opinion includes: 3:11-13, 15; 4:20-5:12; 6:17-7:9; 8:20-15:3; 15:25-18:1; 18:3-9; 18:25-21:6; 22:8-28:17; 29:23-25; 30:6-14, 25; 31:1-32:1-2; 43:6-53:23; 54:20-55:9; 57:17-93:1; 93:11-96:14; 97:4-6, 10-24; 98:2-3, 5-25; 99:1-7, 10, 12-14; 100:17-21. (*See* Saldana Dep., Doc. 77)  The Court also considers the exhibits that Saldana discussed in her deposition. (*See* Saldana Exhs., Docs. 77–3, 77–4, 77–5, 77–6, 77–7)

before Trejo crossed into the United States, she had selected Saldana as the midwife who would help her deliver the baby.

On September 7, 1997, at 5:45 a.m., Trejo gave birth to Plaintiff at Saldana's clinic. As was her practice, Saldana recorded the birth in a notebook that she maintained and in which she recorded information for each birth that she attended. (Birth Record Book, PX8, Doc. 75–8) The notebook contains Saldana's records over many years, arranged chronologically, with Plaintiff's birth recorded in its chronologically-appropriate location.[2]

Because Saldana was an experienced midwife, she was well-versed on filing birth records with the City of Brownsville. She prepared the documentation to record Plaintiff's birth and submitted it to the City. Trejo recalled signing the documents, and one of them bears a "Received" stamp from the City of Brownsville Public Health Department, with the date of September 1997. (Birth Record Filing, PX5, Doc. 85–3, 3)

At the time, the City would mail the birth records to the state registry in Austin, which would issue the Texas birth certificate. For an unknown reason, however, no such document issued for Plaintiff. In the year after Plaintiff's birth, Alfredo Medina submitted a request and the requisite payment to Brownsville City Hall for the birth certificate. Each time, the City returned his money, informing him that they could not find the record.

In September 1998, Trejo obtained a Mexican birth certificate for Plaintiff, with a birth date of August 31, 1997. (Mexican Birth Record, PX2, Doc. 85–1, 2–3) Trejo chose the August birthdate because she believed that Mexican schools applied a September 1 cutoff date for enrollment, meaning that a child born in early September would miss the cutoff by a few days and would have wait until the following year to enter school.

---

[2] Alfredo Medina paid Saldana for her assistance with Plaintiff's birth.

On July 12, 2000, Alfredo Medina filed another application with the City of Brownsville for a copy of Plaintiff's birth record. Two days later, the City Secretary prepared an internal city memorandum summarizing the history with Plaintiff's records, identifying various unknowns:

- "[O]ur records show that it was initially filed";
- "Our records show that there was reason (could have been an error) that it was not initially filed with the state"; and
- "[N]o further documentation [existed] on why the record was not filed".

(Memorandum, PX1, Doc. 85, 7)  The City Secretary instructed a city employee to "contact this family and ask the father and mother to drop by with proper identification" so that the City could "start the process" to file a delayed birth record. (*Id.*)  It is unclear whether the City contacted Trejo or Jose Medina, but no delayed birth record ever issued.

In the following years, Plaintiff used her Mexican birth certificate to obtain other official documents, such as her Mexican consular identification, her children's birth certificates, and her American marriage license. (Consular ID Card, DX2, Doc. 86–2; Marriage License, DX3, Doc. 86–3; Birth Certificates, DX4, Doc. 86–4)  She relied on the document, even though she believed that it contained false information, because she had no other form of identification.

## II. Conclusions of Law

Plaintiff brings this declaratory judgment action under 8 U.S.C. § 1503(a), which provides a mechanism for an individual within the United States to challenge the denial of a right or privilege based on the determination of her citizenship.

### A. Applicable Standards

Under Section 1503(a), "[t]he Court must make a *de novo* determination of whether a plaintiff is a United States citizen." *Garcia v. Clinton*, 915 F. Supp. 2d 831, 833 (S.D. Tex. 2012), *aff'd sub nom. Garcia v. Kerry*, 557 F. App'x 304 (5th Cir. 2014).  "There are two sources of

citizenship, and two only: birth and naturalization." *Thomas v. Lynch*, 796 F.3d 535, 538 (5th Cir. 2015) (quoting *Bustamante–Barrera v. Gonzales,* 447 F.3d 388, 394 (5th Cir. 2006)).  In the current matter, Plaintiff claims she acquired citizenship at the time of her birth by virtue of being born in the United States.

In a Section 1503(a) case, the district court holds a bench trial and weighs the evidence, determines the credibility of witnesses, and resolves conflicting testimony. FED. R. CIV. P. 52(a)(1), (6); *United States v. Jennings*, 726 F.2d 189, 190 (5th Cir. 1984).  A plaintiff must prove her claim to citizenship by a preponderance of the evidence. *Escalante v. Clinton*, 386 F. App'x 493, 496 (5th Cir. 2010) (citing *De Vargas v. Brownell*, 251 F.2d 869, 870 (5th Cir. 1958)).  "The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 622 (1993) (cleaned up).  In essence, if the evidence demonstrates only that it is equally likely that the plaintiff was born in a foreign country as in the United States, the plaintiff has not carried her burden.

"A contemporaneously filed foreign birth record creates a presumption of alienage", although that presumption can be rebutted. *Sanchez v. Kerry*, No. 4:11-CV-02084, 2014 WL 2932275, at *4 (S.D. Tex. June 27, 2014), *aff'd*, 648 F. App'x 386 (5th Cir. 2015).  Courts generally afford delayed birth certificates less evidentiary weight compared to more contemporaneously issued birth certificates. *See, e.g.*, *De La Cruz Vargas v. Blinken*, 569 F. Supp. 3d 556 (S.D. Tex. 2021), *appeal dismissed sub nom. Vargas v. Blinken*, No. 22-40007, 2022 WL 2448086 (5th Cir. Feb. 28, 2022) (affording less evidentiary weight to a 1974 delayed Texas birth certificate than to a 1968 Mexican birth certificate); *Sanchez v. Kerry*, No. 4:11-CV-02084, 2014 WL 2932275 (S.D. Tex. June 27, 2014), *aff'd*, 648 Fed. Appx. 386 (5th Cir. 2015) (giving less evidentiary weight to a 1988 delayed Texas birth certificate than to a 1987 Mexican birth certificate); *Pena-Sanchez v.*

*Clinton*, No. 11-cv-00125, Order, ECF No. 34 (S.D. Tex. March 28, 2013) (viewing a 1971 Mexican birth certificate as holding greater evidentiary weight than a 1974 delayed Texas birth certificate).

Baptismal certificates, medical records, and school records constitute evidence of an individual's birthplace, but courts consider such documents as "secondary evidence". *See, e.g.*, *De La Cruz v. Clinton*, No. A-11-CV-675-AWA, 2012 WL 1941373, at *2 (W.D. Tex. May 29, 2012).

As for testimony, courts weigh the credibility of witnesses, but receive a plaintiff's self-serving statements and those of interested witnesses "with a grain of salt." *De Vargas*, 251 F.2d at 871; *see also Garcia*, 915 F. Supp. 2d at 835; *Patel v. Rice*, 403 F. Supp. 2d 560, 565 (N.D. Tex. 2005), *aff'd*, 224 F. App'x 414 (5th Cir. 2007).

### B. Application

Applying the applicable standard and legal principles to the evidence admitted at trial, the Court concludes that Plaintiff has established by a preponderance of the evidence that she was born in the United States.

The witnesses at trial consistently testified that Trejo illegally entered the United States to give birth at Saldana's home-based midwife clinic. Trejo described in detail her efforts to enter the United States, her stay at Saldana's home, the birth of Plaintiff, and her and her baby's return to Mexico the following day. Trejo's father-in-law and mother-in-law recalled that Trejo journeyed to Brownsville to give birth, and that they picked her up the next day to drive her back to Matamoros. They confirmed that Trejo's mother-in-law (Zulema) had known Saldana for decades, although they had not maintained close ties, and that this connection explained Trejo's decision to utilize Saldana's midwifery services. The Court found their testimony credible.

Saldana's testimony (by deposition) and her records provide persuasive evidence corroborating Trejo's recollection. Saldana maintained a notebook in which she recorded details for each birth that she attended, and she entered her notes in chronological order. The notebook

contains an entry for Plaintiff's birth on September 7, 1997, in a location chronologically appropriate. The notebook contains no suggestion that Saldana added a record for Plaintiff's birth after the fact.[3]

In addition, records from the City of Brownsville confirm that someone, most likely Saldana, submitted a request for a Texas birth certificate within days of Plaintiff's birth. While the submission never resulted in the issuance of a Texas birth certificate, the fact that the City of Brownsville possessed those documents, with a "Received" stamp dated September 1997, and with accurate information about Plaintiff's birth and her parents, lends considerable weight to the testimony affirming that Trejo gave birth to Plaintiff in Brownsville. Moreover, about three years after Plaintiff's birth, when Alfredo Medina sought once more to obtain Plaintiff's Texas birth certificate, the City Secretary prepared an internal memorandum acknowledging that someone filed for a Texas birth certificate for Plaintiff in 1997, although the application was not submitted to the state registry. That internal memorandum implicitly acknowledges that a Texas birth certificate should have issued for Plaintiff, but that unknown obstacles stymied the process.

To be sure, the witnesses also offered some mutually incompatible testimony. For example, Trejo testified that she stayed with Saldana for two weeks prior to giving birth, while Saldana claimed that pregnant mothers never stayed at her home clinic unless they were in active labor. In addition, different witnesses provided varying testimony about how Trejo arranged her crossing into the United States, or the timing and circumstances of Zulema meeting Saldana in the late 1960s. Despite these inconsistencies, the Court found the witnesses credible on the ultimate factual issue–i.e., that Trejo entered the United States in September 1997 and gave birth to Plaintiff at Saldana's home clinic.

---

[3] The Court notes that by all accounts, Saldana maintained a credible midwifery practice for many years. The Government made no suggestion that she had ever been suspected of falsifying Texas birth records, and no evidence would support such an accusation.

The Government naturally highlights the Mexican birth certificate that Plaintiff's parents obtained, and which Plaintiff has utilized repeatedly over the years to her benefit, such as to obtain a Mexican consular identification, a marriage license, and birth certificates for her own children. In essence, Plaintiff and her parents concede that they made misrepresentations to government officials about the date and location of Plaintiff's birth. But while their conduct is not admirable, they provided plausible explanations for their actions. Trejo explained that she believed she needed a Mexican birth certificate with an August 1997 birth date so that Plaintiff could enter the Mexican public school system a year earlier. And Plaintiff testified that she possessed no other government identification, requiring her to use the Mexican birth certificate in connection with her children's births and her marriage. The Court finds these explanations credible, rendering the Mexican birth certificate of little evidentiary weight.[4]

Overall, the evidence demonstrates that Trejo gave birth to Plaintiff in Brownsville, Texas, on September 7, 1997. As a result, the Court finds that Alyn Guadalupe Medina Trejo has proved by a preponderance of the evidence that she was born in the United States.

### III. Attorney's Fees and Costs

In her Second Amended Complaint, Plaintiff requests the recovery of attorney's fees. (Second Am. Compl., Doc. 23, 4) The parties, however, did not address the matter at trial. Under 28 U.S.C. 2412(d)(1)(A), a court "shall award" a prevailing party its attorney's fees and costs, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." "When a claim for attorney's fees is made, the government has the burden of showing that its position in every stage of the proceedings was substantially justified by demonstrating that its actions had a reasonable basis both in law and fact." *Baker v. Bowen*, 839 F.2d 1075, 1080 (5th Cir. 1988). The Government's position is justified

---

[4] The court also concludes that the Mexican birth certificate, issued a year after Plaintiff's birth, does not represent a contemporaneously filed foreign birth record that creates a presumption of alienage.

if a reasonable person would conclude that a "genuine dispute" existed between the parties. *Nail v. Martinez*, 391 F.3d 678, 684 (5th Cir. 2004).

In the present matter, the Court finds that the position of the United States was substantially justified. The underlying factual issues in this case created a genuine dispute that justified the Government's decision to litigate the case to trial. Although Plaintiff prevailed, some evidence supported the Government's position, which was in no manner frivolous. As a result, the Court declines to award attorney's fees and costs to Plaintiff in this matter.

## IV. Conclusion

Based on the Court's findings of fact and the applicable law, it is:

**ORDERED** that Plaintiff Alyn Guadalupe Medina Trejo's request for a declaratory judgment is **GRANTED IN PART AND DENIED IN PART**;

**ORDERED** that, pursuant to 8 U.S.C. § 1503(a), Plaintiff Alyn Guadalupe Medina Trejo was born on September 7, 1997, in Brownsville, Texas, rendering her a natural born citizen of the United States of America; and

**ORDERED** that Plaintiff Alyn Guadalupe Medina Trejo's request for attorney's fees is **DENIED**.

The Court will separately issue a Final Declaratory Judgment in accordance with this Order and Opinion.

Signed on May 9, 2024.

Fernando Rodriguez, Jr.
United States District Judge